**GENERAL GMC TRUCKS, INC. and General Leasing, Inc., Plaintiffs-Appellants,**

v.

**MERCURY FREIGHT LINES, INC., Defendant-Appellee.**

No. 82–8235.

United States Court of Appeals, Eleventh Circuit.

May 12, 1983.

Kenneth L. Millwood, E. Kendrick Smith, Atlanta, Ga., for plaintiffs-appellants.

Thomas C. Shelton, Charles M. Dalziel, Jr., Atlanta, Ga., Marshall J. Demouy, Mobile, Ala., for defendant-appellee.

Before RONEY and HILL, Circuit Judges, and MORGAN, Senior Circuit Judge.

PER CURIAM:

This court, after thoroughly reviewing the record in this case, AFFIRMS on the basis of the order of the Honorable G. Ernest Tidwell, entered on March 18, 1982, Civil Action No. C.81–279A; attached hereto as an addendum.

ADDENDUM

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| GENERAL GMC TRUCKS, INC. and GENERAL LEASING, INC. | ) ) ) | CIVIL ACTION |
| V. | ) ) | NO. C81–279A |
| MERCURY FREIGHT LINES, INC. | ) | |

ORDER

The above-styled matter is presently before the court on the defendant's motion for summary judgment. The defendant has filed a statement of undisputed material facts which is uncontroverted by the statement filed in response by the plaintiff, and therefore these facts are deemed to be admitted. Rule 91.72, Local Court Rules, United States District Court for the Northern District of Georgia. The facts which are not in dispute include the following.

Plaintiffs General GMC Trucks, Inc. (hereinafter "General GMC") and General Leasing, Inc. (hereinafter "General Leasing"), Georgia corporations headquartered in Atlanta, are authorized dealers of General Motors over-the-road tractors, trailers, and other trucking equipment used by motor carriers. Defendant Mercury Freight Lines, Inc. (hereinafter "Mercury"), an Alabama corporation headquartered in Mobile, is an interstate motor carrier operating throughout the Southeastern United States and Texas under certificates of public convenience and necessity granted by the Interstate Commerce Commission ("ICC") and by appropriate state regulatory agencies.

Early Rival Motor Express, Inc. (hereinafter "Early Rival") is a Georgia corporation that was organized in September, 1976 to operate as a motor carrier in Georgia and in interstate commerce under certificates of convenience and necessity issued by the ICC and the Georgia Public Service Commission. After Early Rival entered into a contract to purchase certain of the operating rights of Meadors Freight, Inc. (an Atlanta-based motor carrier which had been adjudicated a bankrupt in August, 1976), the company began in May of 1977 to operate over certain of the routes formerly serviced by Meadors Freight, the needed regulatory approvals having first been applied for and obtained on a temporary basis.

It is alleged by officers of the plaintiffs that prior to his death on November 14, 1977, Clarence Levi, the sole shareholder and president of defendant Mercury, entered into several oral arrangements on behalf of Mercury with agents of the plaintiffs, the purpose of which was to ensure the repayment of certain funds advanced by the plaintiffs to Early Rival, in the event that Early Rival or its president failed to repay the same. It is also alleged that Mr. Levi requested plaintiffs to lease trucking equipment to Early Rival as needed to supplement other equipment that Early Rival possessed, and that Mr. Levi promised to assume Early Rival's obligations under these leases in the event of a default by Early Rival. None of these alleged agreements were reduced to writing.

J.A. Sorrow served as the acting president of Mercury following the death of Clarence Levi and until June 9, 1980, when the new owner of Mercury made him president and chief executive officer. Mr. Sorrow is the only officer or agent of Mercury with whom any representative of the plaintiffs ever discussed Mr. Levi's alleged arrangements concerning Early Rival, and all of those discussions took place subsequent

to Mr. Levi's death. After the death of Clarence Levi, the plaintiffs entered into additional lease agreements with Early Rival and made deliveries of substantial amounts of equipment to that company without seeking or receiving any approval from Mercury.

Sometime in 1981, Early Rival encountered serious financial difficulties and ceased direct operation of the routes it had acquired from Meadors Freight. By the time that this suit was initiated in 1981, the plaintiffs believed that Early Rival was insolvent. Plaintiffs have repossessed the leased equipment, and Early Rival is unable to conduct its motor carrier operations. The plaintiffs have never released Early Rival or its president from their obligation to pay the amounts claimed to be owed by Mercury in the complaint, and have made numerous efforts to collect on those obligations from those parties.

Upon a motion for summary judgment, this court may generally consider only evidence that would be admissible at trial. *Roucher v. Traders & General Insurance Co.*, 235 F.2d 423 (5th Cir.1956); *Super Valu Stores, Inc. v. First National Bank of Columbus, Georgia*, 463 F.Supp. 1183 (M.D. Ga.1979). In a diversity action such as this, admissibility is determined by Georgia's rules of witness competency. *Id.*

The defendant first raises the issue that the plaintiff cannot make out a prima facie case since the testimony of Branch Mosely and William Holzwarth, who were respectively president and comptroller of plaintiffs General GMC and General Leasing at all relevant times hereto, is incompetent under the provisions of the Georgia Dead Man's Statute applicable to transactions occurring in 1976 and 1977. The pertinent provisions of this statute prohibit agents of surviving parties from testifying as to transactions or communications with a deceased agent of a corporation. *Ga.Code Ann.* § 38–1603(3), (5) (1953); *Allstate Insurance Co. v. Christian Brokerage Co.*, 145 Ga.App. 126, 127, 243 S.E.2d 281 (1978). Although these provisions were superseded by revised *Ga.Code Ann.* § 38–1603 in 1979,

the new Code section does not apply to transactions or occurrences which took place prior to July 1, 1979. Acts 1979, p. 1261, section 2. Accordingly, the court concludes that the testimony of Mr. Mosely and Mr. Holzwarth is inadmissible to prove the alleged agreements. Plaintiff's reliance on *Christian v. Allstate Insurance Co.*, 152 Ga. App. 358, 262 S.E.2d 621 (1979), is misplaced, as that opinion dealt with "subagents" of a corporation, not officers and directors.

In responding to the motion for summary judgment, plaintiffs have submitted an affidavit of S.J. Meadows, president of Early Rival, which initially appears to support their allegations as to the existence of the purported agreements with defendant Mercury. However, a second affidavit of Mr. Meadows, filed on behalf of the defendant, states the following, in pertinent part:

> I was not present at any meeting attended by Clarence Levi wherein any arrangements with Branch Mosely and/or General GMC concerning possible backing of Early Rival was discussed in any detail. I have no recollection of ever hearing a discussion of these arrangements in the presence of Clarence Levi. My understanding about those arrangements as stated in my earlier affidavit was based primarily on conversations between me and Bill Holzwarth outside the presence of Clarence Levi, who did not himself ever discuss those arrangements with me.

The only other independent testimony that the plaintiffs have offered is that of Alton F. Irby, a business associate and friend of Mr. Mosely who was also a friend of Clarence Levi. Although he testified that Clarence Levi told him that he had gotten Branch Mosely to "front for him" in a truck line, Mr. Irby knew no details of the alleged transactions upon which the plaintiffs base their claims. The court concludes that the testimony of Meadows and Irby is insufficient to establish a prima facie case for the plaintiffs, even when construed most strongly in the plaintiffs' favor, as must be done in deciding a motion for summary judgment filed by the defendant.

In addition, the court concludes that the alleged oral contracts are too vague, indefinite, and uncertain to be enforceable under Georgia law. *See, e.g., Super Valu Stores, supra; Bagwell-Hughes, Inc. v. McConnell,* 224 Ga. 659, 164 S.E.2d 229 (1968). Even assuming that the purported agreements were to completely indemnify the plaintiffs in all of their dealings with Early Rival, it is still a completely open question as to whether the agreements were made by Clarence Levi individually or on behalf of Mercury. This deficiency is incurable, even if the plaintiffs have allegedly totally performed their part of the bargain.

Finally, the court also concludes that enforcement of the alleged oral agreements is barred by the Georgia Statute of Frauds, *Ga.Code Ann.* § 20–401(2), which provides that "[a] promise to answer for the debt, default, or miscarriage of another" must be in writing. An exception exists where the promise constitutes an original undertaking "whereby a new promisor, for valuable consideration, substitutes himself as party who is to perform, and releases the original promisor." *State Highway Dept. v. Eagle Construction Co.,* 125 Ga.App. 678, 680, 188 S.E.2d 810 (1972); *accord, Howard, Weil, Labouisse, Fredericks, Inc. v. Abercrombie,* 140 Ga.App. 436, 231 S.E.2d 451 (1976). Such is not the case here, however, as the plaintiffs have admitted that they have never released Early Rival or its president from the obligations which are presently claimed to be owed by defendant Mercury. As one Georgia court has stated, "[w]hen one person tells another to let a third person have goods and that he will see that the debt is paid, in order for the promisor to become bound in the absence of a writing, it is requisite that credit shall be given *exclusively* to the promisor." *Ross v. W.P. Stephens Lumber Co.,* 138 Ga.App. 748, 750, 227 S.E.2d 486 (1976) (emphasis in original). Plaintiffs having failed to extend credit "exclusively" to defendant Mercury, their recovery is barred by the Statute of Frauds.

In light of the foregoing, the court need not address defendant's remaining argu-ments concerning estoppel and the alleged illegality of the purported agreements. For the reasons previously discussed, the defendant's motion for summary judgment is hereby granted and sustained.

SO ORDERED, this 18th day of March, 1982.

/S/ G. Ernest Tidwell
G. ERNEST TIDWELL
JUDGE, UNITED STATES
DISTRICT COURT